

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR–13–400

|  |  |  |
|---|---|---|
|  |  | **Opinion Delivered** January 22, 2014 |
| MICHAEL ELLIS | APPELLANT | APPEAL FROM THE DREW COUNTY CIRCUIT COURT [NO. CF-2009-0161] |
| V. |  |  |
|  |  | HONORABLE ROBERT BYNUM GIBSON, JR., JUDGE |
| STATE OF ARKANSAS | APPELLEE |  |
|  |  | AFFIRMED |

## DAVID M. GLOVER, Judge

Michael Ellis pleaded guilty to the offense of possession of marijuana with intent to deliver. He was placed on probation for a period of thirty-six months, which was scheduled to end in May 2013. He was arrested on new charges on October 12, 2012. On November 9, 2012, the State filed a petition to revoke his probation, alleging that he had violated the conditions that 1) forbade him from committing any offense punishable by confinement in jail or prison and 2) forbade him from purchasing, owning, controlling, or possessing any deadly weapons or firearms. Following a hearing on the petition, the trial court revoked Michael's probation, concluding that he had violated the conditions of his probation. He was sentenced to eight years in the Arkansas Department of Correction. As his sole point of appeal, Michael contends that the trial court clearly erred in finding that he violated the conditions of his probation. We disagree and affirm.



*Background*

At the revocation hearing, John Hughes testified that he was employed by the City of Pine Bluff as part of the Tri-County Drug Task Force. He explained that on October 12, 2012, the DEA and United States Postal Inspection asked for task-force assistance in the controlled delivery of a package that had been determined to be suspicious. The package was addressed to 704 Barrow Drive, which was the address Michael had given his probation officer as his place of residence.

Hughes explained that during the search of the residence that eventually ensued, the task force found in a bedroom a large, clear container that contained what was believed to be marijuana in plain view on a dresser; one and one-half tablets of what was believed to be Xanax; some suspected K-2 synthetic marijuana; 600 pink-colored tablets located in a "false can" that they initially thought was ecstasy, but that turned out to be Tylenol and caffeine; two firearms; several bags of marijuana inside another false container; a bag of what appeared to be methamphetamine in a different part of the residence; $1500 that Michael attempted to hand to his girlfriend, Gabriella; $720 in a wallet in the same container as the suspected methamphetamine; and $1980 in a backpack in the bottom of a closet.

Hughes testified that the southeast bedroom was the one he believed to be Michael's bedroom; that his cell phone was in that room, along with his high-school diploma, mail addressed to him in the dresser drawers, and men's clothing. He explained that Michael's girlfriend, Gabriella, was present at the residence that day; that the .40 caliber Ruger was found between the mattress and box springs in the described bedroom; that the Ruger

had nine rounds in its magazine; and that a shotgun was also found in an enclosed carport in a storage room at the back. He said that the crime lab confirmed the suspected methamphetamine as methamphetamine; a substance that field-tested as heroin turned out to be a synthetic form of marijuana.

Hughes acknowledged that when opened, the "suspicious" package delivered to Michael's address contained Damiana, which he explained is "completely legal by itself" but is also the preferred main component in making synthetic marijuana. He said Michael did not try to fight the officers; they did not find a weapon on him; the bedroom containing Michael's belongings was on the front side of the house; he would not describe the room located across the hall from the bedroom as a bedroom; Gabriella said she was Michael's girlfriend; her name was above the bed in the bedroom, along with her purse and I.D., but Michael was adamant she did not live there; and there was no evidence of anyone else living there. Hughes acknowledged that he did not fingerprint or DNA test the Ruger.

Brooke Norsworthy, Michael's probation officer, also confirmed that 704 Barrow Drive was the address she had in her records for Michael and that he had never told her anyone else was living with him at that address. She testified that following his arrest, he admitted to her that he was aware there were firearms in the house, but that he did not think it was an issue because they belonged to his brother.

Michael Ellis testified that he completed drug court with no sanctions and that it was his understanding that when he completed drug court he would be off probation; that that was the plea agreement he made in Monticello. He testified that on October 12, 2012, he

SLIP OPINION

had ordered some Damiana Leaf "off e-Bay" for his grandmother; that she liked to make tea with it. He said the "bomb dog sniffed on that package," and they needed to find out if it was a bomb; so, he opened the package for them and they put him in handcuffs. Michael said he gave them permission to search the house because he did not think there was anything in there. He said that he "never touched no drugs, never seen no guns"; he did not know any guns or drugs were in the residence. He testified he slept on the couch by the front door and was not in any of the bedrooms. He said he moved in with his brother and was using a couple of dresser drawers that might have contained some of his information. Michael stated that his brother, Frederick Ellis, was evicted after the incident happened, but that before then, he lived in the house full time. He said that he did not test positive for any illegal substances. In response to a question by the trial court, it was confirmed that his brother was not available to testify and that he had not been subpoenaed.

On cross-examination, Michael stated that he was not sanctioned for drug tests, but acknowledged that he was sanctioned for failure to report to two required groups, for failure to report for a mandatory probation meeting, and for failure to report for an AAM conference. He stated that he had paid all of his probation fees. Michael said that the bedroom where the .40 caliber weapon was found was his brother's bedroom; that he, Michael, did not have a bed because he had just moved in recently; that he had not been there more than three or four months; and that the money found was his brother's and his brother had given it to him to pay bills.



On re-direct, Michael stated that Gabriella was his brother's girlfriend; he never went into their bedroom; she was not living at that house; and he had a violation for testing positive for benzodiazepine, which he claimed was attributable to his prescription for Zoloft.

At the conclusion of the hearing, the trial court explained that the State had proved by "considerably more than a preponderance of the evidence" Michael's violation of his probation conditions. The trial court summarized the evidence supporting that conclusion and then stated its findings that Michael was in possession of marijuana and methamphetamine on October 12; that he was also in possession of a loaded pistol; and that the violations occurred during the term of his probation. The trial court revoked Michael's probation and sentenced him to a term of eight years.

*Discussion*

Michael contends that the trial court's finding that he violated the terms and conditions of his probation was clearly erroneous because the State failed to prove anything beyond the fact that he was found to be present in a shared residence where certain illegal items were also found; that none of the items were found on his person; that his fingerprints and/or DNA were not found on them or even tested; that none of the found items could be said to have been found in a room, closet, or other place under his exclusive control; that no witnesses connected him to the found items; that no special markings or indicia of ownership established that he was the owner or possessor of them; that he did not test positive for marijuana or methamphetamine; and that he provided a reasonable excuse for having $1600 in his possession.

The State has the burden of proving by a preponderance of the evidence the violation of a condition of probation. *Haley v. State*, 96 Ark. App. 256, 240 S.W.3d 615 (2006). Evidence that is not sufficient to support a criminal conviction may be sufficient to support a revocation. *Id.* Appellate courts defer to the trial court's superior position to resolve matters of credibility and the weight to be given to testimony. *Id.*

When contraband is found in a place that is immediately and exclusively accessible to the defendant and subject to his control, constructive possession may be implied. *Mayo v. State*, 70 Ark. App. 453, 20 S.W.3d 419 (2000). In cases where there is joint occupancy of the premises where contraband is seized, however, some additional factor must be demonstrated to link the accused to the contraband. *Young v. State*, 77 Ark. App. 245, 72 S.W.3d 895 (2002). The State must prove that the person charged knew that the possessed object was contraband and that he/she exercised care, control, and management over the contraband. *Id.* The necessary knowledge and control can be inferred from the surrounding circumstances, such as proximity of the contraband to the accused, the fact that it is in plain view, and ownership of the property where found.

Here, it is not at all clear that we are even dealing with joint occupancy. Michael denied that Gabriella lived in the house, and, although he claimed his brother lived there, there was no evidence to support that claim. Moreover, we are dealing with a revocation, not a criminal conviction; consequently, the burden of proof for the State was by a preponderance of the evidence, not beyond a reasonable doubt. Contraband and the firearm were found in a bedroom that had Michael's mail, cell phone, and high-school diploma in

it—even though Michael denied ever entering the bedroom. Although Gabriella's name was above the bed, Michael was adamant that she did not live there, and he did not claim that the items were hers. Instead, he said they belonged to his brother. However, his brother was not present to testify, and, except for Michael's testimony, there was no evidence that his brother lived there. Moreover, Michael acknowledged that his brother was not present to testify and had not even been subpoenaed to do so. Michael's probation officer testified that he told her after the arrest that he was aware of the presence of the firearms in the house but that he did not consider it a violation because the guns belonged to his brother. She also testified that, prior to Michael's arrest, she had never even heard of such a brother, much less that he lived at that address with Michael. Michael offered an explanation for the large amounts of cash that were found, but, as with his other claims, matters of credibility are for the trial court, and it clearly did not credit Michael's version of events. We find no clear error in the trial court's findings that, while on probation, Michael was in possession of marijuana and methamphetamine and that he was also in possession of a loaded firearm—all of which violated the terms and conditions of his probation.

Affirmed.

HARRISON and WYNNE, JJ., agree.

*Kearney Law Office*, by: *Jack R. Kearney*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., for appellee.